OPINION OF THE COURT
 

 Read, J.
 

 This case turns on whether the trial court undertook a “searching inquiry” to insure that defendant’s request to proceed pro se was accompanied by a “knowing, voluntary and intelligent waiver of the right to counsel”
 
 (People v Arroyo,
 
 98 NY2d 101, 103 [2002];
 
 see Faretta v California,
 
 422 US 806, 835 [1975];
 
 People v McIntyre,
 
 36 NY2d 10, 17 [1974]). We have consistently refrained from creating a catechism for this inquiry, recognizing that it “may occur in a nonformalistic, flexible manner”
 
 (People v Smith,
 
 92 NY2d 516, 520 [1998]). Further, when deciding whether a defendant actually understood the dangers
 
 *581
 
 of self-representation, a reviewing court may look to the whole record, not simply to the questions asked and answers given during a waiver colloquy (see
 
 People v Vivenzio,
 
 62 NY2d 775 [1984]). Measured by these standards, defendant effectively waived his right to counsel in this trial, which took place more than a year before our decision in
 
 Arroyo.
 

 I.
 

 A police officer arrested defendant after seeing him selling drugs in Times Square in October 2000. A “CJA interview sheet” prepared following arrest (and placed in defendant’s court file) indicated that, at the time, defendant was 38 years old, had earned a GED and was a full-time student at New York Restaurant School. Defendant’s court file also contained a “NYSID report” detailing his date of birth and extensive criminal history, which dated to 1989 and included convictions for 3 felonies and 15 misdemeanors. At his arraignment, defendant was assigned counsel.
 

 Following indictment, defendant prepared a dismissal motion pro se, in which he asserted that the drugs seized from him had not been properly tested. He went on to argue the merits of his motion at a hearing held to determine his request for a suppression hearing. Additionally, defendant asked to proceed pro se, with assigned counsel placed in a “standby” role.
 

 After the court denied defendant’s dismissal motion, he displayed a relatively high level of familiarity with the criminal justice system, stating that “I’d like to preserve my rights under CPL 240.20, demanding the discovery of the proficiency of the chemist who tested everything right here on [the] record.” The court granted a suppression hearing, but declined to rule on defendant’s request to proceed pro se, deferring that issue to the trial court to which the case was to be assigned.
 

 About six weeks later, defendant arrived in the trial court, which he asked to address. The trial judge admonished defendant that this was “not a good idea” and that it might be to his “detriment.” While acknowledging this advice, defendant persisted in his bid to speak personally. In a lengthy colloquy, he explained the previously denied motion. After the trial judge informed defendant that he would abide by the previous judge’s decision, defendant announced that he had “an application here to proceed pro se.” Several colloquies ensued, after which the trial judge granted defendant’s request to exercise his right to self-representation.
 

 
 *582
 
 As defendant concedes here, the trial judge repeatedly and adequately warned him of the dangers of self-representation, and gave him several opportunities to express a change of heart. In each instance, defendant unequivocally asserted that he wished to proceed pro se. Following his repeated, unambiguous requests to represent himself and the trial judge’s increasingly detailed warnings and questions, defendant emphatically asserted that “Yes, I, Eric Providence, wish to proceed pro se and have my newly assigned counsel to remain as my legal advisor. Yes, I do.” The trial judge responded, “All right, then we will do that.”
 

 Defendant went on to defend himself at both the suppression hearing and the subsequent trial. He was backed up by counsel, who consulted with him. During the hearing and trial, defendant made motions, raised objections and cross-examined the People’s witnesses. At trial, defendant conducted jury selection, and delivered an opening statement and summation. The jury convicted defendant, and the Appellate Division affirmed, with two Justices dissenting (308 AD2d 200 [1st Dept 2003]). A dissenting Justice granted defendant leave to appeal. We now affirm.
 

 II.
 

 The “searching inquiry” undertaken when a defendant waives the right to counsel in favor of self-representation is aimed at insuring that the defendant “was aware of the dangers and disadvantages of proceeding without counsel”
 
 (People v Slaughter,
 
 78 NY2d 485, 492 [1991];
 
 see also People v Mitchell,
 
 61 NY2d 580, 584 [1984];
 
 People v Kaltenbach,
 
 60 NY2d 797, 798-799 [1983];
 
 People v Sawyer,
 
 57 NY2d 12, 21 [1982],
 
 cert denied
 
 459 US 1178 [1983]). Defendant concedes, and the record establishes, that the trial court adequately fulfilled its responsibility to make him “aware of the dangers and disadvantages of self-representation”
 
 (Faretta,
 
 422 US at 835).
 

 Nonetheless, defendant contends that his waiver of counsel was ineffective. He argues that our decision in
 
 Arroyo
 
 mandates that, as part of the “searching inquiry,” the trial court must question a defendant on the record about his “ ‘age, education, occupation, previous exposure to legal procedures and other relevant factors bearing on a competent, intelligent, voluntary waiver’ ”
 
 (People v Arroyo;
 
 98 NY2d at 104, quoting
 
 People v Smith,
 
 92 NY2d at 520). Neither
 
 Arroyo
 
 nor
 
 Smith
 
 ordains reversal of defendant’s conviction.
 

 
 *583
 
 In
 
 Arroyo,
 
 we expressly noted that “we have eschewed application of any rigid formula and endorsed the use of a nonformalistic, flexible inquiry”
 
 (Arroyo,
 
 98 NY2d at 104). In
 
 Smith,
 
 where the trial court removed counsel over the defendant’s protests, we said the same
 
 (Smith,
 
 92 NY2d at 520-521). Accordingly, these two cases do not support defendant’s position that the trial court’s failure specifically to ask him pedigree questions mandates reversal. Put differently, a waiver of the right to counsel will not be deemed ineffective simply because a trial judge does not ask questions designed to elicit each of the specific items of information recited in
 
 Arroyo.
 
 We reiterate, though, that it is better practice to ask such questions and that record evidence “ ‘should affirmatively disclose that a trial court has delved into’ ” these matters (98 NY2d at 104, quoting
 
 Smith,
 
 92 NY2d at 520).
 

 Significantly, when determining if a defendant effectively waived the right to counsel, what we have required is “a reliable basis for appellate review”
 
 (Arroyo,
 
 98 NY2d at 104;
 
 see also Smith,
 
 92 NY2d at 520). Here, we have a “reliable basis.”
 

 First, a reviewing court may look to the whole record, not simply to the waiver colloquy, in order to determine if a defendant effectively waived counsel. Indeed, in
 
 People v Vivenzio
 
 (62 NY2d 775 [1984]), the trial court did not ask any questions regarding “the defendant’s age, education, occupation and previous exposure to legal procedures”
 
 (People v Vivenzio,
 
 96 AD2d 728, 728 [4th Dept 1983],
 
 revd
 
 62 NY2d 775 [1984] [internal quotation marks omitted]). Yet, we concluded that “there could be a finding
 
 on this record
 
 that defendant knowingly and intelligently waived his right to counsel” (62 NY2d at 776 [emphasis added and citation omitted]). In reaching this conclusion, we noted that the trial court “determined that defendant was an adult who had been involved in the criminal process before”
 
 (id.).
 
 Since the waiver colloquy did not reveal this information, we obviously looked to the whole record
 
 (see id.', compare Dallio v Spitzer,
 
 343 F3d 553, 563 [2003] [rejecting “rigid . . . formulas or scripted procedures” for counsel waivers, and noting that the effectiveness of a waiver can be gleaned from the “totality of the circumstances ”]). In light of the whole record here, there is no doubt that defendant understood exactly what he was doing when he waived his right to counsel.
 

 The court file contained defendant’s pedigree information. Further, the trial judge had numerous opportunities to see and hear defendant firsthand. As a result, he had general knowledge
 
 *584
 
 of defendant’s age, literacy and familiarity with the criminal justice system. Finally, nothing in the lengthy colloquies in this record calls into question defendant’s ability to understand the trial judge’s detailed warnings regarding self-representation. Indeed, defendant’s performance during the suppression hearing and trial shows that he clearly understood the ramifications of waiving counsel. In sum, this record provides a “reliable basis” (Arroyo, 98 NY2d at 104) for us to conclude that defendant effectively waived the right to counsel.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo and R.S. Smith concur.
 

 Order affirmed.