[957 NE2d 255, 932 NYS2d 765]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEXANDER G. CRAMPE, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BLAKE WINGATE, Appellant.

Argued September 15, 2011; decided October 13, 2011

## POINTS OF COUNSEL

*Legal Aid Society, Appeals Bureau,* Riverhead (*Adrienne Wallace, Robert C. Mitchell* and *Alfred J. Cicale* of counsel), for appellant in the first above-entitled action. In view of the totality of the circumstances bearing on defendant's capability of representing himself, it was fatal error for the trial judge to permit defendant to proceed pro se; moreover, such error was compounded by the court's appointment of standby counsel whose presence and function were virtually unutilized, particularly at critical stages of the trial. (*Faretta v California,* 422 US 806; *People v Rosen,* 81 NY2d 237; *People v McIntyre,* 36 NY2d 10; *People v Davis,* 49 NY2d 114; *People v Schoolfield,* 196 AD2d 111.)

*Thomas J. Spota, District Attorney,* Riverhead (*Marcia R. Kucera* of counsel), for respondent in the first above-entitled action. The trial court properly gave effect to appellant's knowingly, voluntarily and intelligently executed pretrial waiver of his right to counsel. (*People v Arroyo,* 98 NY2d 101; *People v McIntyre,* 36 NY2d 10; *Faretta v California,* 422 US 806; *People v Slaughter,* 78 NY2d 485; *Adams v United States ex rel. McCann,* 317 US 269; *People v Kinchen,* 60 NY2d 772; *People v Olivo,* 52 NY2d 309; *People v Schoolfield,* 196 AD2d 111, 83 NY2d 915; *People v Wilder,* 275 AD2d 268, 95 NY2d 893; *People v Glover,* 90 AD2d 776.)

*Warren S. Landau,* New York City, and *Lynn W.L. Fahey* for appellant in the second above-entitled action. I. The court violated appellant's right to counsel when it allowed him to represent himself, at his pretrial hearing and for months thereafter, without advising him of the risks of self-representation or the importance of having counsel. (*Iowa v Tovar,* 541 US 77; *Faretta v California,* 422 US 806; *Gideon v Wainwright,* 372 US 335; *Johnson v Zerbst,* 304 US 458; *People v Arroyo,* 98 NY2d 101; *People v Harris,* 77 NY2d 434; *People v Bing,* 76 NY2d 331; *People v Davis,* 75 NY2d 517; *People v McIntyre,* 36 NY2d 10; *Martinez v Court of Appeal of Cal., Fourth Appellate Dist.,* 528 US 152.) II. The court violated appellant's due process right to present a defense, the prescribed order of trial, and the

fundamental mode of criminal proceedings when it required him to decide whether he would put on a defense case before the end of the People's case and without speaking with his investigator. (*Chambers v Mississippi*, 410 US 284; *People v Mehmedi*, 69 NY2d 759; *People v Fujah*, 182 AD2d 774; *People v Whipple*, 97 NY2d 1; *People v Olsen*, 34 NY2d 349; *People v Fama*, 212 AD2d 542; *People v Ventura*, 35 NY2d 654; *Brooks v Tennessee*, 406 US 605; *People v Rosen*, 81 NY2d 237; *McKaskle v Wiggins*, 465 US 168.)

*Richard A. Brown, District Attorney*, Kew Gardens (*John F. McGoldrick* and *John M. Castellano* of counsel), for respondent in the second above-entitled action. I. The Appellate Division correctly held that defendant's exercise of his right to proceed pro se was knowing and intelligent. (*Iowa v Tovar*, 541 US 77; *Johnson v Zerbst*, 304 US 458; *Faretta v California*, 422 US 806; *Patterson v Illinois*, 487 US 285; *Dallio v Spitzer*, 343 F3d 553; *United States v Sandles*, 23 F3d 1121; *United States v Oreye*, 263 F3d 669; *People v Sawyer*, 57 NY2d 12; *People v Smith*, 92 NY2d 516; *People v Arroyo*, 98 NY2d 101.) II. The Appellate Division properly rejected defendant's assertion that the trial court erroneously altered the order of the trial, and defendant's claim is unpreserved. (*People v Riback*, 13 NY3d 416; *People v Gray*, 86 NY2d 10; *People v Agramonte*, 87 NY2d 765; *People v Gajadhar*, 9 NY3d 438; *People v Brown*, 7 NY3d 880; *People v Washington*, 64 NY2d 961; *People v Garcia*, 69 NY2d 903; *People v Santos*, 86 NY2d 869; *People v Medina*, 53 NY2d 951; *People v Kisoon*, 8 NY3d 129.) III. Defendant's pro se supplemental claims are largely unreviewable and completely without merit. (*People v Gray*, 86 NY2d 10; *People v Smith*, 138 Misc 2d 531; *People v Shelton*, 136 Misc 2d 644; *People v Ifill*, 137 Misc 2d 14; *People v Mason*, 136 Misc 2d 968; *United States v Ross*, 719 F2d 615; *People v Burnett*, 245 AD2d 460; *People v Hawkins*, 11 NY3d 484; *People v Diaz*, 15 NY3d 764; *People v Scarborough*, 49 NY2d 364.)

**OPINION OF THE COURT**

READ, J.

The common question in these appeals is whether the courts fulfilled their responsibility to make a "searching inquiry" before allowing defendants to give up the right to a lawyer and conduct their defenses pro se (*see People v Arroyo*, 98 NY2d 101, 103 [2002]; *People v McIntyre*, 36 NY2d 10, 17 [1974]; *see also Faretta v California*, 422 US 806, 835 [1975]; *Iowa v Tovar*, 541

US 77, 88-89 [2004]). In both cases, we conclude that the inquiries were deficient because defendants were not adequately advised of the dangers and disadvantages of self-representation.

## I.

### Crampe

Defendant Alexander Crampe was arrested and charged with seventh-degree criminal possession of a controlled substance (Penal Law § 220.03) for possessing a vial of phencyclidine, or PCP. When he appeared in Justice Court, defendant acknowledged that he had not retained an attorney to represent him. The town justice then asked defendant if he intended to proceed pro se, and defendant replied "I guess[ ] so, your Honor."

This exchange prompted the judge to hand defendant a pretrial order meant to apply to the six cases then pending against him. The form order, which the judge reviewed with defendant by reading it aloud to him, stated that defendant's failure to accept the referral to the Legal Aid Society would be taken as a waiver of his right to assigned counsel and his election to proceed without counsel; that he should be prepared to proceed to trial on the next scheduled adjourn date; and that his failure to appear with counsel would "be deemed an acknowledgment of the advice and warnings of this Court relative to the right of counsel."

The form order continued as follows:

> "The defendant has the absolute right to have counsel at all times during this proceeding. The defendant has a further constitutional right to represent himself in a criminal proceeding.

> "The defendant acknowledges and understands the risk of representing himself and the failure to cooperate with counsel. Among those risks is the risk that he could be convicted of a crime, and he may be sentenced to jail if found guilty.

> "The defendant acknowledges that a criminal trial and proceedings associated with a trial are difficult to understand and complex in nature.

> "If you elect to represent yourself by failure to cooperate with the Legal Aid Society and retain counsel, you acknowledge that you are under no distress, no threats or promises have been made to

you, and you are not suffering from any mental defect, and your election to represent yourself is not affected by drugs or alcohol.

"You are further advised that you have a constitutional right to be present at a trial of these charges before this Court. This right may be waived by your conduct. Such conduct must be a knowing, voluntary, intelligent waiver of this right. Acknowledgment of this right is by your signature hereon this date.

"Further, your signature is taken as evidence that you are not under any distress or compulsion, and you are ready for trial on August 21, 2008 at 9:30 [A.M.], or any adjourn date thereafter without justifiable excuse, shall be deemed a waiver of your right to be present at the trial of these charges, and we will proceed in your absence at that time."

Defendant signed the order, and the case was adjourned for trial. The judge cautioned him as he left: "Be here with a lawyer or without a lawyer, as you choose. I advise you to get a lawyer, sir." Defendant did not heed the judge's advice, however, and so went to trial pro se, with standby counsel. The jury returned a verdict of guilty, and the judge sentenced defendant to six months of incarceration.

Upon defendant's appeal, the Appellate Term unanimously affirmed, concluding that "Justice Court adequately warned defendant of the importance of legal representation and the risks associated with proceeding pro se" (26 Misc 3d 144[A], 2010 NY Slip Op 50421[U] [2010]). The court added that it was "apparent[ ] from defendant's prior arrest and conviction record" that he was "not unfamiliar with the operation of the criminal justice system." A Judge of this Court granted defendant leave to appeal (15 NY3d 748 [2010]).

*Wingate*

Defendant Blake Wingate was arrested and subsequently indicted for fourth-degree criminal possession of stolen property (Penal Law § 165.45 [5]) and seventh-degree criminal possession of a controlled substance (Penal Law § 220.03) after the police found him sitting in a stolen van and recovered a crack pipe from his pocket.

When defendant informed his assigned counsel that he might "go to the grievance committee," the attorney successfully

moved to be relieved. Supreme Court appointed a second attorney to represent defendant, who asked if there were "any way" he could represent himself with this new counsel assisting him. The judge instructed him to consult with his new attorney first. But at the next calendar call, defendant's second assigned counsel informed the court that defendant did not want her to represent him "in any way, shape or form," and "[o]n top of that, he [had] sent correspondence indicating his displeasure" and "[t]he lines of communication [were] irreparably broken." She requested to be relieved.

Defendant complained to the judge that his attorney "was trying to talk [him] out of [his] . . . defense." The judge asked defendant if he wanted to represent himself at the suppression hearing, and defendant responded that he did, but "need[ed] co-counsel" and had previously represented himself with a lawyer's assistance. The judge advised defendant that he was not entitled to hybrid representation, and again inquired as to what he wanted to do. Defendant replied "Same as before. Request to represent myself." At that point, the judge engaged in the following exchange with defendant:

> "THE COURT: You understand that you're facing felony charges, sir?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: You understand that you face jail time if convicted of the top charge in this indictment?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: Do you understand that the right to represent yourself is not an absolute right? If you can't conduct yourself in a proper manner in the courtroom, you would forfeit the right to pro se representation. Do you understand that?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: Sir, notwithstanding any of the risks that you face representing yourself, do you still wish to go forward and defend yourself in this case? That's your constitutional right. Do you understand that?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: Okay. I will allow you to represent yourself."

A suppression hearing was held before a judicial hearing officer later the same day. The hearing officer recommended denial of defendant's motion to suppress physical evidence (the crack pipe) and statements that he made to the police, and referred the case back to Supreme Court for determination. Supreme Court adopted the hearing officer's findings of fact and conclusions of law, and denied defendant's motion.

The case went to trial five months later before another Supreme Court Justice, who explored with defendant whether he had "considered legal representation." This judge first confirmed with defendant that he had turned down an offer of a minimum sentence of 1½ to 3 years; warned him that he faced a sentence of 15 years to life if convicted and sentenced as a discretionary persistent felon; and stressed that, "based on [his] many years of experience," it was his

> "good faith belief that it is a mistake to represent yourself. Areas of law can be complicated and a person, not even another lawyer [should] engage in self-representation. So I strongly urge you to get a lawyer, and if you cannot afford one, a lawyer will be appointed for you. That is my honest heartfelt belief. Because of the exposure that you may be facing in terms of incarceration, should you lose and the intricacies involved in self-representation and legal matters, you should seriously get a lawyer to represent you. Do you understand that?"

Defendant responded that he understood.

After reiterating that defendant "could be facing a long time in jail, up to life," the trial judge cautioned that it was "a big mistake to go it alone." The judge then asked defendant if he had any legal training, and defendant replied that he had been studying law for the last 10 or 12 years "in the street and different libraries" and was "not a paralegal [but] just received legal research certificates." When the judge inquired if he was a college graduate, defendant responded that he held a two-year associate's degree in labor studies from Empire State College, and was "a law librarian, library clerk in the facility" where he worked.

Again, the trial judge "strongly urge[d]" defendant "with all the sincerity that [he could] muster that [defendant] must" get a lawyer. As the judge put it, "I say that because obviously the decision is yours, but I use the term 'must' get a lawyer. You are

facing too much in this case. Once it's over, it's over. So you should seriously consider that." Before sending the case to the trial-ready part for disposition of defendant's pro se speedy trial motion, the judge reiterated that defendant should think twice before representing himself:

> "THE COURT: You think about what I told you. This case may be disposed of. You may be back here or not. Whatever you do, you may seriously think about what I am telling you. I can't tell you in [any] stronger terms[:] get a lawyer. Don't play with this.

> "THE DEFENDANT: I requested an assistant.

> "THE COURT: Listen to me. Get a lawyer. Don't play with this. You will end up in jail for the rest of your life and that's ridiculous.

> "THE DEFENDANT: I appreciate it.

> "THE COURT: You insist that a lawyer represent you."

After defendant's speedy trial motion was denied and his case was recalled for trial, the trial judge "reiterate[d]" that he had "indicated to [defendant] before the matter was referred back [to the trial-ready part] that [he] should seriously consider getting a lawyer." When the judge asked defendant whether he had "done that," defendant replied "Yes, I have considered it, your Honor." He explained that "the reason why I am persistent now is because I had attorneys. I am going this by myself. I appreciate what you said. I asked for an attorney to assist me, but I am not going to let them take control because that's why I am persistent." At that point, the judge said there was "[n]o reason for any further explanation," and appointed standby counsel to assist defendant, as he had requested.

Stating that there were "a few questions" that he had to pose before he might allow defendant to represent himself, the trial judge next carried out an extensive dialogue with him, filling 20 pages of transcript. The judge first looked into defendant's age and competency in English; he explored whether defendant was taking or had ever taken medications that might compromise his understanding; he confirmed that defendant did not suffer from any mental or physical condition that might impair his ability to follow what was happening in court. The judge inquired if defendant had been afforded "sufficient time to reflect on [his] decision to represent [him]self." When defendant responded affirmatively, the judge asked "And having

reflected on this decision, you are now desirous of continuing to represent yourself?" Defendant answered "Yes."

The trial judge then reviewed defendant's schooling, work history and knowledge of the criminal justice system, eliciting that defendant had achieved an "A" average at Empire State College; had worked as an electrician, a cook, and a legal clerk; was not a stranger to the criminal justice system; had experienced some success representing himself in this case in the past; and had appeared in court with a lawyer, although he ultimately did not get along with either of his two assigned attorneys. The judge followed up by establishing that defendant had never represented himself at trial, and examining whether he knew anything about the rules of evidence. (He ultimately announced that he was "convinced" that defendant knew next to nothing about this topic.) The judge looked at whether defendant had been coerced or threatened or in any way influenced to request to represent himself.

The trial judge probed defendant's comprehension of the charges against him, the plea offer that had been made (and that he would have "minimal time" left if he accepted it) and the length of the sentence he might receive if convicted. In response to the judge's questions, defendant claimed to understand his lawyers' explanations of court procedures and legal issues related to the charges. When asked to explain to the judge exactly why he wished to waive his right to counsel, defendant asserted that, otherwise, he would not know about "things . . . going on between [his attorney] and the DA," wanted to "eliminate the middle person" and believed he was "better off just representing [him]self."

The trial judge pursued whether defendant knew the functions of the court and the jury, and defendant answered that the "jury would be the triers of the facts" and would decide the case "based on the facts . . . presented . . . and the instructions." When the judge called upon defendant to explain his role and the prosecutor's role, defendant responded that the

> "prosecutor's role is . . . to seek justice not just convictions. Her duty is to present her case . . . and to do it fairly. My job is to protect, preserve the rights of myself . . . , and to present the same information or evidence that I have to contradict what is being stated by the witnesses . . . that [the] prosecution presents."

The trial judge observed to defendant that

"[t]he law recognizes the right of a person to defend himself or herself. However, the law also recognizes such a choice may not be a wise one. Let me alert you now to some of the [dangers] of self-representation so that you will be aware of them before you finally decide whether you wish to give up your right to be represented by a lawyer. Please listen to me carefully. Even the most intelligent and educated layman has small and sometimes no skills in the field of law. Left without the assistance of counsel, he or she may be put on trial without a proper charge and convicted upon incomplete[ ], irrelevant, or inadmissible evidence. Often the layman lacks the skill [or] knowledge to adequately prepare his or her defense, even though he may have a good one. Without counsel, though an accused may not be guilty, he faces the danger of conviction because he does not know how to adequately protect his legal rights. Lawyers are both generally college and law school trained before they are permitted to take the bar examination. Only those who pass the bar are licensed to practice law. The number who become trial lawyers [is] small. In order to adequately represent a client, a trial lawyer needs a comprehensive knowledge of the rules of evidence, which I believe you do not possess, as well as an understanding of the art of jury selection and the art of cross-examination . . . [M]ost non-lawyers do not have such education and training. Did you understand what I just said?"

Defendant answered "Yes."

The trial judge then asked defendant if he understood that almost all pro se representations are unsuccessful; that by choosing to represent himself he was not entitled to a lawyer, although the judge would appoint a lawyer to "sit next to [him] and give [him] legal advice"; that he would be held to the same legal standards as an attorney; that he would "receive no advantage or assistance from [the] court" because "[e]ven in those cases where [he] show[ed] a lack of complete knowledge of how to represent [himself], [the court couldn't] jump in the middle" and help him out; that when defendant did "something wrong," the judge was going to "call [him] on it" and he had to

"live with that"; that he risked not being able to understand legal terms of art used in court proceedings, the "case names used and what they stand for" and potentially applicable rules or theories of criminal law; that he would be subject to the same rules of evidence as an attorney and chanced not being able to introduce evidence because of his ignorance of these rules; that his examination of witnesses would be held to the same standards as those expected of an attorney; that he would have to make his own opening and closing statements to the jury; that the assistant district attorney presenting the case against him was trained in the law and was familiar with criminal law principles, and would not "go 'easy' on" him because he was representing himself; that by waiving his right to counsel he was giving up the "benefit of [an] attorney's ability, training, and past experiences in speaking to a jury"; and that he would be expected to "conduct [himself] appropriately in the courtroom." Defendant indicated that he understood all of these things, and "[w]ithout a doubt" still wished to represent himself.

The trial judge elaborated on his admonition to defendant that "self-representation [was] not a license to abuse" the courtroom's "dignity and decorum," cautioning him that if he did not conduct himself properly he might lose his right to be present at trial. Again, defendant said that he understood. With that representation, the judge pronounced himself satisfied that he had asked defendant the "relevant questions to determine if [he understood] the consequence[s] and the pitfalls of self-representation."

The case went to trial, and the jury convicted defendant of the charged crimes. Supreme Court subsequently sentenced him to prison terms of 2 to 4 years on the stolen property charge, and one year on the drug possession charge, to run concurrently.

The Appellate Division unanimously modified by vacating the conviction of possession of stolen property and dismissing that count of the indictment, and otherwise affirmed (70 AD3d 734 [2d Dept 2010]). Although defendant's legal sufficiency claim was unpreserved, the court reached it in the interest of justice and determined that his presence in the van was too brief to establish the element of possession. The court further held that, although the suppression court did not conduct a proper waiver colloquy before allowing defendant to represent himself at the pretrial suppression hearing, "the record as a whole demonstrate[d] that the defendant made a knowing, voluntary, and

intelligent decision to waive his right to counsel and proceed pro se" (*id.* at 735). A Judge of this Court granted defendant leave to appeal (15 NY3d 780 [2010]).

## II.

"[B]efore proceeding pro se a defendant must make a knowing, voluntary and intelligent waiver of the right to counsel" (*Arroyo*, 98 NY2d at 103, citing *People v Slaughter*, 78 NY2d 485, 491 [1991] [in order for a defendant to "forego( ) the benefits associated with the right to counsel . . . the court must be satisfied that (the defendant's waiver) was unequivocal, voluntary and intelligent" (citations omitted)] and *People v Vivenzio*, 62 NY2d 775, 776 [1984] ["Regardless of his lack of expertise and the rashness of his choice, defendant could choose to waive counsel if he did so knowingly and voluntarily"]). As we emphasized in *McIntyre*—the foundation stone of our self-representation jurisprudence under article I, § 6 of the New York State Constitution—"[i]mplicit in a defendant's assertion of his right to defend *pro se* is the decision to disavow the constitutional right to counsel. For such a waiver to be effective, the trial court must be satisfied that it has been made competently, intelligently and voluntarily" (36 NY2d at 17).

To ascertain whether a waiver is knowing, voluntary and intelligent, a court must undertake a "searching inquiry" designed to "insur[e] that the defendant [is] aware of the dangers and disadvantages of proceeding without counsel" (*People v Providence*, 2 NY3d 579, 582 [2004] [internal quotation marks and citation omitted]; *see also People v Sawyer*, 57 NY2d 12, 21 [1982], *rearg dismissed* 57 NY2d 776 [1982], *cert denied* 459 US 1178 [1983] [to ascertain the validity of a waiver, "the court should undertake a sufficiently searching inquiry of the defendant to be reasonably certain that the dangers and disadvantages of giving up the fundamental right to counsel have been impressed on the defendant" (internal quotation marks omitted)]; *People v Kaltenbach*, 60 NY2d 797, 799 [1983] [court did not satisfy the duty to make a searching inquiry by declaring that defendant was entitled to legal representation, was facing a serious charge and, if convicted, might receive a year's imprisonment because this "precautionary inquiry (did not) adequately warn defendant of the risks inherent in representing himself or apprise him of the value of counsel" (internal quotation marks omitted)]; *Slaughter*, 78 NY2d at 491 [suppression court failed to undertake sufficiently searching inquiry to be

reasonably certain that defendant understood the dangers and disadvantages of proceeding pro se]; *People v Smith*, 92 NY2d 516, 520 [1998] ["To pass muster, a searching inquiry must reflect record evidence that defendants know what they are doing and that choices are exercised with eyes open" (internal quotation marks omitted)]; *Arroyo*, 98 NY2d at 103 ["In determining whether a waiver (is knowing, voluntary and intelligent), the court should undertake a searching inquiry of defendant" (internal quotation marks omitted)]). Additionally, a searching inquiry encompasses consideration of a defendant's pedigree since such factors as age, level of education, occupation and previous exposure to the legal system may bear on a waiver's validity (*see Providence*, 2 NY3d at 583; *Arroyo*, 98 NY2d at 104; *Smith*, 92 NY2d at 520).

> "Although we have eschewed application of any rigid formula and endorsed the use of a nonformalistic, flexible inquiry, the court's record exploration of the issue 'must accomplish the goals of adequately warning a defendant of the risks inherent in proceeding *pro se*, and apprising a defendant of the singular importance of the lawyer in the adversarial system of adjudication' " (*Arroyo*, 98 NY2d at 104, quoting *Smith*, 92 NY2d at 520 [citing *Kaltenbach*, 60 NY2d at 799]; *see also Providence*, 2 NY3d at 583).

Finally, we have held that "a reviewing court may look to the whole record, not simply to the waiver colloquy, in order to determine if a defendant effectively waived counsel" (*id.*).

■ In *Crampe*, the town justice did not make the requisite searching inquiry to insure that defendant was aware of the drawbacks of self-representation before allowing him to go down that path. The form that he read aloud only pointed out that proceeding pro se brought with it the danger of conviction—a risk that also exists when the accused is represented by counsel—and that criminal trials and proceedings are complicated (*cf. Vivenzio*, 62 NY2d at 776 [waiver colloquy sufficient where, among other things, "(t)he court warned defendant forcefully that he did not have the training or knowledge to defend himself, that others who had done so had been unsuccessful and that if he insisted upon appearing *pro se* he would be held to the same standards of procedure as would an attorney"]).

■ The colloquy conducted by the suppression court in *Wingate* was deficient for the same reason—the court's inquiry did

not direct defendant's attention to the dangers and disadvantages of self-representation beyond the risk of a felony conviction. Conversely, the trial court engaged in an extensive colloquy with defendant, drawing his attention to the many challenges that he would face if he proceeded pro se rather than avail himself of legal representation. As a result, there is a sufficient showing that defendant's decision to defend himself *at trial* was knowing, voluntary and intelligent. And certainly, it may logically be inferred from this record that nothing the suppression court might have said would have dissuaded defendant from representing himself at the pretrial hearing: he was impervious to the trial court's later repeated and thorough explanations of the perils of defending himself at trial and the importance of counsel, and was dissatisfied with the attorneys assigned to represent him and, ultimately, with standby counsel as well. This may be what the Appellate Division meant when it decided that the "record *as a whole*" demonstrated a valid waiver of counsel and election to proceed pro se (70 AD3d at 735 [emphasis added]), citing *Providence*. There, we looked to the record as a whole to establish that the judge was already familiar with the defendant's pedigree information when he engaged in the waiver colloquy. While the record as a whole may also be considered when a court assesses whether the accused is aware of the dangers of self-representation, we agree with defendant that this situation is very different. Simply put, the trial court's warnings were incapable of retrospectively "curing" the suppression court's error. The critical consideration is defendant's knowledge at the point in time when he first waived his right to counsel, and his waiver then was not knowing, intelligent and voluntary.

It remains as true today as it was in 1974 that "the multifaceted problems generated by a motion to proceed *pro se*[ make] the task of the trial court . . . exceedingly difficult" (*McIntyre*, 36 NY2d at 14). A checklist might be helpful as a memory aid, but there is simply no one-size-fits-all format for a searching inquiry. And while the inquiry conducted by the trial judge in *Wingate* was exemplary, we do not mean to suggest that the colloquy there has created a template to be followed in every instance where a defendant seeks to proceed pro se.

As the United States Supreme Court suggested in *Tovar*, the scope of a searching inquiry turns on the context in which the right to counsel is waived. Justice Ginsburg explained that in *Patterson v Illinois* (487 US 285 [1988]), the Court "elaborated

on 'the dangers and disadvantages of self-representation' to which *Faretta* referred" by observing that at trial, " 'counsel is required to help even the most gifted layman adhere to the rules of procedure and evidence, comprehend the subtleties of *voir dire*, examine and cross-examine witnesses effectively . . . , object to improper prosecution questions, and much more' " (*Tovar*, 541 US at 89, quoting *Patterson* at 300 n 13); and that warnings of the pitfalls of going to trial without counsel must therefore be " 'rigorous[ly]' conveyed . . . [while] at earlier stages of the criminal process, a less searching or formal colloquy may suffice" (*id.*, quoting *Patterson* at 298). Thus,

> "*Patterson* describes a 'pragmatic approach to the waiver question,' one that asks '*what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage*,' in order 'to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized' " (*id.* at 90 [emphasis added], quoting *Patterson* at 298).*

Accordingly, in *People v Crampe*, the order of the Appellate Term should be reversed and a new trial ordered; and in *People v Wingate*, the order of the Appellate Division should be modified by remitting to Supreme Court for a new suppression hearing. In the event defendant prevails at the suppression hearing, a new trial should be held; alternatively, in the event the People prevail, the judgment should be amended to reflect that result

---

* *Tovar* resolved a conflict among federal courts of appeals concerning the proper application and interpretation of the *Faretta* decision. Specifically, some courts had interpreted *Faretta* to require a trial judge to conduct a searching inquiry or special hearing to insure that the accused understood the dangers and disadvantages of defending himself before allowing self-representation (essentially, the same way we interpreted the right-to-counsel provision in the state constitution), while other courts took the position that no searching inquiry or special hearing was required in order for an accused's exercise of the right of self-representation to be considered knowing and intelligent (*see McDowell v United States*, 484 US 980, 980-981 [1987] [two-Justice dissent from the denial of a writ of certiorari]). For example, before *Tovar* the Second Circuit did not take *Faretta* to mean that a searching inquiry was constitutionally mandated (*see Dallio v Spitzer*, 343 F3d 553, 564-565 [2d Cir 2003] [court concludes in a habeas corpus proceeding that "neither *Faretta*'s holding nor its *dictum* clearly establishes that explicit warnings about the dangers and disadvantages of self-representation are a minimum constitutional prerequisite to every valid waiver of the right to counsel," although such warnings are desirable to insure knowing and intelligent waivers]).

(*Slaughter*, 78 NY2d at 493; *People v Millan*, 69 NY2d 514, 521-522 [1987]). As so modified, the order in *People v Wingate* should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

In *People v Crampe*: Order reversed, etc.

In *People v Wingate*: Order modified, etc.