[987 NYS2d 373]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARLON COLE, Appellant.

First Department, June 5, 2014

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Lisa A. Packard* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Beth Fisch Cohen* and *Susan Axelrod* of counsel), for respondent.

## OPINION OF THE COURT

AcosTA, J.

At issue in this burglary case is whether the trial court conducted the "searching inquiry" required by the Court of Appeals in *People v Crampe* (17 NY3d 469 [2011]) before allowing defendant to proceed pro se. We find that it did not and, therefore, reverse and remand for a new trial.

Defendant first requested to proceed pro se during the suppression hearing. Noting that they were "in the middle of a hearing," the court advised defendant that he could confer with counsel about anything he thought counsel "should be doing" when the questioning of the witness was completed. At the conclusion of the evidence, counsel read a statement prepared by defendant, in which defendant sought suppression of a statement. A few days later, the court denied suppression and adjourned the case for trial. Defendant again asked to proceed pro se. The court said that that was a possibility and that it would be discussed on the next court date, and urged defendant to think about it. When defendant said that he "just need[ed] a legal adviser," the court answered that defendant might get a legal adviser, but urged defendant to discuss it with counsel and "think about it."

Several weeks later, counsel told the court that he and defendant had discussed the matter and that defendant still wanted to proceed pro se. Defendant responded, "Okay," when the court asked how he was feeling, and, in response to the court's inquiry about the level of his education, stated that he had "a full high school education" and "a diploma."

The court instructed defendant:

> "It is in your interest to continue to have [your attorney] represent you. You have a right to represent

yourself. That doesn't mean it is a good idea. In fact, it is probably a bad idea. Generally, it is a very bad idea. Mr. San Pedro is a trained attorney so I would urge you avail yourself of his services so that he can represent you in this case. I have every confidence that he will do a very good job.

"Can we proceed with him as your lawyer?"

Defendant responded, "I understand what you are saying but I have been studying and doing legal work. He will be [my] legal . . . advisor." The court told defendant that San Pedro could be his lawyer or his legal advisor, and defendant confirmed that he preferred to use counsel as a legal advisor. The court reminded defendant that he could change his mind at any time and have the attorney take over as counsel and that defendant should alert the court if he had "any legal questions" or needed to consult with counsel.

The court added,

"Understand that there are all kinds of dangers in doing this, not the least of which is if you find yourself in a position, for example, giving an opening statement in this case, the jury will actually hear you talk to them, which is something that will not happen if you chose not to testify in this case."

Defendant said that he understood. The court added that this was a course "fraught with problems" and that defendant should "think about it carefully and talk to Mr. San Pedro about it over lunch." The court permitted defendant to represent himself and granted defendant's request that San Pedro act as his legal advisor.

Before allowing a defendant to proceed pro se, the court must determine that the defendant's waiver of the right to counsel is made knowingly, voluntarily, and intelligently (*People v Crampe*, 17 NY3d 469, 481 [2011], *cert denied* 565 US —, 132 S Ct 1746 [2012]). A waiver cannot be deemed knowing, voluntary and intelligent unless, after a "searching inquiry," the court is satisfied that defendant is "aware of the dangers and disadvantages of proceeding without counsel" (*id.* [internal quotation marks omitted]). The court must adequately inform the accused of the "risks inherent in proceeding pro se" and apprise the defendant of "the singular importance of the lawyer in the adversarial system of adjudication" (*id.* at 482 [internal quotation marks omitted]).

It is not enough to tell the defendant that it is against his interests to represent himself, even when coupled with advise about the consequences of conviction (*see e.g. People v Kaltenbach*, 60 NY2d 797, 799 [1983] [court's declarations that defendant was entitled to be represented by a lawyer, that he was facing a serious charge, and that, if convicted, he could receive a year's imprisonment failed to adequately warn]; *People v Sawyer*, 57 NY2d 12, 21 [1982], *cert denied* 459 US 1178 [1983] [court's declaration that defendant was "facing a very serious charge" and that his "own best interests are probably served by having a lawyer represent you" were "woefully inadequate"]). It is not enough to warn the defendant in general terms that going pro se would be "extraordinarily dangerous" and "that most defendants who represent themselves are not successful," even when coupled with a discussion of the potential sentences (*People v Rafikian*, 98 AD3d 1139, 1140 [2nd Dept 2012], *lv denied* 20 NY3d 988 [2012]).

In addition to insuring that the defendant is aware of the dangers and disadvantages of proceeding pro se, a searching inquiry "encompasses consideration of a defendant's pedigree since such factors as age, level of education, occupation and previous exposure to the legal system may bear on a waiver's validity" (*Crampe*, 17 NY3d at 482). The colloquy should also include the nature of the charges and the range of allowable punishments (*see United States v Fore*, 169 F3d 104, 108 [2d Cir 1999], *cert denied* 527 US 1028 [1999]).

A comparison of the warnings given in *People v Crampe* (17 NY3d at 473-474) and by the hearing court in *People v Wingate* (17 NY3d 469, 475-480 [2011] [decided with *Crampe*]), which were found inadequate by the Court of Appeals, with inquiry conducted by the trial court in *Wingate* (17 NY3d at 476-480), which was found adequate, illustrates the extent of the inquiry that must be conducted.*

---

* The trial court in *Crampe* merely gave the defendant a form advising of his rights, and said "[b]e here with a lawyer or without a lawyer, as you choose. I advise you to get a lawyer" (*Crampe*, 17 NY3d at 473-474). The form stated:

"The defendant has the absolute right to have counsel at all times during this proceeding. The defendant has a further constitutional right to represent himself in a criminal proceeding.

"The defendant acknowledges and understands the risk of representing himself and the failure to cooperate with counsel. Among

We quote extensively from the *Wingate* trial court's "extensive colloquy with defendant, drawing his attention to the many challenges that he would face if he proceeded pro se rather than avail himself of legal representation" (*id.* at 483), to stress the extent of the searching inquiry mandated by the Court. The trial court reviewed the favorable plea offer that defendant had turned down, warned him that as a discretionary persistent felon he faced a life sentence, "and stressed that, 'based on [its]

those risks is the risk that he could be convicted of a crime, and he may be sentenced to jail if found guilty.

"The defendant acknowledges that a criminal trial and proceedings associated with a trial are difficult to understand and complex in nature.

"If you elect to represent yourself by failure to cooperate with the Legal Aid Society and retain counsel, you acknowledge that you are under no distress, no threats or promises have been made to you, and you are not suffering from any mental defect, and your election to represent yourself is not affected by drugs or alcohol.

"You are further advised that you have a constitutional right to be present at a trial of these charges before this Court. This right may be waived by your conduct. Such conduct must be a knowing, voluntary, intelligent waiver of this right. Acknowledgment of this right is by your signature hereon this date.

"Further, your signature is taken as evidence that you are not under any distress or compulsion, and you are ready for trial on August 21, 2008 at 9:30 [a.m.], or any adjourn date thereafter without justifiable excuse, shall be deemed a waiver of your right to be present at the trial of these charges, and we will proceed in your absence at that time" (*id.* at 473-474).

The hearing court's inquiry in *Wingate* consisted of the following:

"[T]he court: You understand that you're facing felony charges, sir?

"[T]he defendant: Yes.

"[T]he court: You understand that you face jail time if convicted of the top charge in this indictment?

"[T]he defendant: Yes.

"[T]he court: Do you understand that the right to represent yourself is not an absolute right? If you can't conduct yourself in a proper manner in the courtroom, you would forfeit the right to pro se representation. Do you understand that?

"[T]he defendant: Yes.

"[T]he court: Sir, notwithstanding any of the risks that you face representing yourself, do you still wish to go forward and defend yourself in this case? That's your constitutional right. Do you understand that?

"[T]he defendant: Yes.

"[T]he court: Okay. I will allow you to represent yourself."

many years of experience,' it was [the court's] 'good faith belief that it is a mistake to represent yourself'" (*id*. at 476).

The court next informed the defendant that the law could be complicated and that even lawyers should not engage in self-representation, especially given the exposure that the defendant was facing in the event of a conviction, and the defendant responded that he understood (*id*.).

> "After reiterating that defendant 'could be facing a long time in jail, up to life,' the trial judge cautioned that it was 'a big mistake to go it alone.' The judge then asked defendant if he had any legal training, and defendant replied that he had been studying law for the last 10 or 12 years 'in the street and different libraries' and was 'not a paralegal [but] just received legal research certificates.' When the judge inquired if he was a college graduate, defendant responded that he held a two-year associate's degree in labor studies from Empire State College, and was 'a law librarian, library clerk in the facility' where he worked" (*id*.).

The court again urged defendant to get a lawyer, and "[b]efore sending the case to the trial-ready part for disposition of defendant's pro se speedy trial motion, the judge reiterated that defendant should think twice before representing himself" (*id*. at 477). After the defendant's speedy trial motion was denied and his case was recalled for trial, the trial judge reiterated that the defendant should seriously consider getting a lawyer; defendant responded that he had asked for an attorney to assist him, but that he did not want an attorney to take control of his case (*id*.).

The trial judge then had an extensive dialogue with defendant, filling 20 pages of transcript. The court delved into the defendant's age, competency in English, whether he was taking or had ever taken medications that might compromise his understanding, and confirmed that defendant did not suffer from any mental or physical condition that might impair his ability to follow what was happening in court. The judge also asked the defendant whether he had sufficient time to reflect on his decision to go pro se, and whether doing so was still his desire, to which the defendant said yes (*id*. at 477). Later in the inquiry, the court asked defendant whether he had been coerced or threatened or in any way influenced to request to represent himself (*id*. at 478).

The trial judge also reviewed defendant's education and employment history, and knowledge of the criminal justice system. In response, the defendant stated that he had an "A" average in college and had worked as a legal clerk. He also had experience with the criminal justice system, and had "some success representing himself in this case in the past," although he never represented himself at a trial. Further inquiry convinced the court that the defendant had no knowledge of the rules of evidence (*id*. at 478).

The trial judge also probed the defendant's understanding of the charges he was facing and the plea offer that had been made, and the length of the possible sentence he might receive if convicted. The defendant said that he understood his lawyers' explanations of court procedures and legal issues related to the charges. He nonetheless preferred self-representation. "[O]therwise, he would not know about 'things . . . going on between [his attorney] and the DA" (*id*.).

The trial judge questioned the defendant about his knowledge of the distinct functions of the judge and the jury. The defendant "answered that the 'jury would be the triers of the facts' and would decide the case 'based on the facts . . . presented . . . and the instructions' " (*id*.). The defendant described the prosecutor's role as

> "to seek justice not just convictions. Her duty is to present her case . . . and to do it fairly. My job is to protect, preserve the rights of myself . . . , and to present the same information or evidence that I have to contradict what is being stated by the witnesses . . . that [the] prosecution presents" (*id*.).

The trial judge then addressed some of the dangers of proceeding pro se:

> "[T]he law recognizes the right of a person to defend himself or herself. However, the law also recognizes such a choice may not be a wise one. Let me alert you now to some of the [dangers] of self-representation so that you will be aware of them before you finally decide whether you wish to give up your right to be represented by a lawyer. Please listen to me carefully. Even the most intelligent and educated layman has small and sometimes no skills in the field of law. Left without the assistance of counsel, he or she may be put on trial without a proper charge and

convicted upon incomplete[ ], irrelevant, or inadmissible evidence. Often the layman lacks the skill [or] knowledge to adequately prepare his or her defense, even though he may have a good one. Without counsel, though an accused may not be guilty, he faces the danger of conviction because he does not know how to adequately protect his legal rights. Lawyers are both generally college and law school trained before they are permitted to take the bar examination. Only those who pass the bar are licensed to practice law. The number who become trial lawyers [is] small. In order to adequately represent a client, a trial lawyer needs a comprehensive knowledge of the rules of evidence, which I believe you do not possess, as well as an understanding of the art of jury selection and the art of cross-examination . . . [M]ost non-lawyers do not have such education and training. Did you understand what I just said?" (*Id.* at 479.)

The defendant answered "Yes" (*id.*).

"The trial judge then asked defendant if he understood that almost all pro se representations are unsuccessful; that by choosing to represent himself he was not entitled to a lawyer, although the judge would appoint a lawyer to 'sit next to [him] and give [him] legal advice'; that he would be held to the same legal standards as an attorney; that he would 'receive no advantage or assistance from [the] court' because '[e]ven in those cases where [he] show[ed] a lack of complete knowledge of how to represent [himself], [the court couldn't] jump in the middle' and help him out; that when defendant did 'something wrong,' the judge was going to 'call [him] on it' and he had to 'live with that'; that he risked not being able to understand legal terms of art used in court proceedings, the 'case names used and what they stand for' and potentially applicable rules or theories of criminal law; that he would be subject to the same rules of evidence as an attorney and chanced not being able to introduce evidence because of his ignorance of these rules; that his examination of witnesses would be held to the same standards as those expected of an attorney; that he would have to make his own opening and closing

statements to the jury; that the assistant district attorney presenting the case against him was trained in the law and was familiar with criminal law principles, and would not 'go "easy" on' him because he was representing himself; that by waiving his right to counsel he was giving up the 'benefit of [an] attorney's ability, training, and past experiences in speaking to a jury'; and that he would be expected to 'conduct [himself] appropriately in the courtroom.' Defendant indicated that he understood all of these things, and '[w]ithout a doubt' still wished to represent himself" (*id*. at 479-480).

Last, the court admonished the defendant that " 'self-representation [was] not a license to abuse' the courtroom's 'dignity and decorum,' cautioning him that if he did not conduct himself properly he might lose his right to be present at trial" (*id*. at 480).

Here, we find that the trial court's inquiry failed to satisfy *Crampe's* "searching inquiry" standard. The court gave nothing more than generalized warnings, and completely failed to advise defendant of the benefits of being represented by counsel. The court's statements to defendant that it was in his "interest" to continue with counsel; that "[g]enerally, [self-representation] is a very bad idea"; and that there were "all kinds of dangers in doing this," its sole example being that defendant would have to give the opening statement himself, failed to insure "that the dangers and disadvantages of giving up the fundamental right to counsel [had] been impressed on . . . defendant" (*Crampe*, 17 NY3d at 481). The court also failed to advise defendant about the "importance of the lawyer in the adversarial system of adjudication" (*see Crampe*, 17 NY3d at 482 [internal quotation marks omitted]). Because we find that the court did not make the requisite searching inquiry, we reverse the judgment convicting defendant and remand for a new trial.

Since we are ordering a new trial, we do not address defendant's other arguments.

Accordingly, the judgment of the Supreme Court, New York County (Robert M. Stolz, J.), rendered February 29, 2012, convicting defendant, after a jury trial, of burglary in the second degree, and sentencing him, as a second felony offender, to a term of eight years, should be reversed, on the law, and the matter remanded for a new trial.

FRIEDMAN, J.P., RENWICK, MANZANET-DANIELS and GISCHE, JJ., concur.

Judgment, Supreme Court, New York County, rendered February 29, 2012, reversed, on the law, and the matter remanded for a new trial.