The People of the State of New York, Respondent,
Etan Leibovitz, Appellant.
Appellate Advocates (Laura B. Tatelman of counsel), for appellant.
Queens County District Attorney (John M. Castellano, Johnnette Traill, Nancy Fitzpatrick Talcott and Jonathan K. Yi of counsel), for respondent.

Appeal from a judgment of the Criminal Court of the City of New York, Queens County (Michelle A. Armstrong, J.), rendered November 13, 2015. The judgment convicted defendant, after a nonjury trial, of disorderly conduct.




ORDERED that the judgment of conviction is affirmed.
Defendant was charged in an accusatory instrument with two counts of disorderly conduct (Penal Law § 240.20 [2], [6]). The Criminal Court granted defendant's application to proceed pro se and, after a nonjury trial, convicted defendant of one count of disorderly conduct (Penal Law § 240.20 [2]). 
Defendant's challenge to the legal sufficiency of the evidence is unpreserved for appellate review, as, although defendant moved at the close of the People's case for a trial order of dismissal, he failed to renew the motion after presenting his own evidence (see People v Kolupa, 13 NY3d 786, 787 [2009]; People v Hines, 97 NY2d 56, 61 [2001]; People v Acevedo, 136 AD3d 1386, 1386 [2016]; cf. People v Finch, 23 NY3d 408, 412, 416 [2014]). In any event, viewing the evidence in the light most favorable to the People (see People v Delamota, 18 NY3d 107, 113 [2011]; People v Acosta, 80 NY2d 665, 672 [1993]), we find that the evidence adduced at trial was legally sufficient to establish defendant's guilt beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349 [2007]).
"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[, he or she] makes unreasonable noise" (Penal Law § 240.20 [2]). The evidence established that the incident had occurred during the morning hours in the courthouse of the Civil Court, Queens County, where peace and order would be expected. A commotion began in the hallway outside of a courtroom, when defendant refused to comply with a court officer's order to stop videotaping. Instead, defendant directed comments at the officer in such a loud voice that a crowd of civilians was attracted to the scene. When defendant attempted to involve the spectators, the officer moved defendant away from the crowd and to the elevator vestibule area—out of a concern that defendant would incite the crowd [*2]or cause a riot. In the elevator vestibule area, defendant's conduct escalated into a vocal and aggressive confrontation with the officer and several other court officers. The officers repeatedly ordered defendant to stop videotaping. Defendant refused to comply, yelling and hollering at the officers, and shouted towards the civilians, asking for "witnesses." Subsequently, a crowd of 12 to 18 civilians gathered in the small elevator vestibule area, interfering with the public's use of the elevators. According to a supervising officer who responded to the incident, defendant's conduct was disruptive to the operation of the court and created an unsafe condition. 
The foregoing evidence, viewed in the light most favorable to the People, was legally sufficient to establish, beyond a reasonable doubt, defendant's guilt of disorderly conduct, in violation of Penal Law § 240.20 (2). Defendant made unreasonable noise by repeatedly directing loud and aggressive language at the court officers and shouting towards members of the public in the courthouse (see People v Poverelli, 37 Misc 3d 139[A], 2012 NY Slip Op 52211[U] [App Term, 1st Dept 2012]), which conduct caused a commotion that required the intervention of several court officers, thereby recklessly creating a risk of public inconvenience, annoyance or alarm (see People v Weaver, 16 NY3d 123, 128-129 [2011]; People v Lee, 55 Misc 3d 138[A], 2017 NY Slip Op 50521[U] [App Term, 1st Dept 2017]; People v Gluckjhagroo, 49 Misc 3d 127[A], 2015 NY Slip Op 51371[U] [App Term, 1st Dept 2015]; People v Barnhill, 46 Misc 3d 148[A], 2015 NY Slip Op 50238[U] [App Term, 1st Dept 2015]; cf. People v Price, 50 Misc 3d 144[A], 2016 NY Slip Op 50231[U] [App Term, 1st Dept 2016]). Indeed, the risk of public harm came to fruition since defendant's statements and conduct caused civilians to congregate in the confined elevator vestibule area, interfering with the public's use of the elevators and disrupting the court's operation. Contrary to defendant's contention, under the circumstances presented, the People did not need to prove that the civilian bystanders involved themselves in the altercation between defendant and the court officers (see People v Weaver, 16 NY3d at 128). Furthermore, upon the exercise of our factual review power (see CPL 470.15 [5]; People v Danielson, 9 NY3d at 348-349), and according great deference to the trial court's credibility determinations, we are satisfied that the verdict was not against the weight of the evidence (see People v Maryash, 48 Misc 3d 129[A], 2015 NY Slip Op 50978[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]; People v Poverelli, 37 Misc 3d 139[A], 2012 NY Slip Op 52211[U]; People v Terry, 34 Misc 3d 144[A], 2012 NY Slip Op 50110[U] [App Term, 1st Dept 2012]). 
We also find no merit in defendant's contention that, before allowing him to proceed pro se, the Criminal Court failed to conduct the requisite searching inquiry to ensure that his waiver of the right to counsel was knowing, voluntary and intelligent (see People v Stone, 22 NY3d 520, 525 [2014]; People v Crampe, 17 NY3d 469, 481 [2011]; People v Arroyo, 98 NY2d 101, 103 [2002]). To ascertain whether a waiver meets this requirement, a court "must conduct a 'searching inquiry' to clarify that [the] defendant understands the ramifications of such a decision" (People v Stone, 22 NY3d at 525; see People v Providence, 2 NY3d 579, 580 [2004]; People v Slaughter, 78 NY2d 485, 491 [1991]). While there is no rigid formula or catechism that a court must follow in conducting such an inquiry, the court must adequately warn the defendant of "the risks inherent in proceeding pro se" and apprise him or her "of the singular importance of the lawyer in the adversarial system of adjudication" (People v Smith, 92 NY2d 516, 520 [1998]; accord People v Crampe, 17 NY3d at 482; People v Arroyo, 98 NY2d at 104). [*3]A searching inquiry should also encompass consideration of a defendant's pedigree, such as the defendant's age, level of education, occupation and previous exposure to the legal system, and other relevant factors bearing on a competent, intelligent, voluntary waiver (see People v Crampe, 17 NY3d at 482; People v Providence, 2 NY3d at 583-584; People v Arroyo, 98 NY2d at 104; People v Smith, 92 NY2d at 520). "Notably, the focus in a self-representation inquiry is not on how much the defendant knows about criminal law and procedure, because ignorance does not preclude self-representation. Instead, the principal focus is on warning a defendant that his or her lack of knowledge, relative to that of a lawyer, will be detrimental if the defendant chooses to waive the right to counsel" (People v Dashnaw, 116 AD3d 1222, 1231 [2014] [internal quotation marks, brackets and citations omitted]; accord People v Sealy, 102 AD3d 591, 591 [2013]; see People v Ryan, 82 NY2d 497, 507-508 [1993]; People v Vivenzio, 62 NY2d 775, 776 [1984]; People v Hall, 49 AD3d 1180, 1181-1182 [2008]). In addition, " 'a reviewing court may look to the whole record, not simply to the waiver colloquy, in order to determine if a defendant effectively waived counsel' " (People v Crampe, 17 NY3d at 482, quoting People v Providence, 2 NY3d at 583). 
Upon a review of the record, we find that the Criminal Court undertook the requisite searching inquiry of defendant to ensure that his waiver of the right to counsel was knowing, voluntary and intelligent (see People v Vivenzio, 62 NY2d at 776; People v Morrow, 143 AD3d 919, 919 [2016]; People v Cruz, 131 AD3d 724, 727 [2015]; People v Dashnaw, 116 AD3d at 1232-1233; cf. People v Griffin, 148 AD3d 735, 736 [2017]; People v Cole, 120 AD3d 72, 80 [2014]; People v Rafikian, 98 AD3d 1139, 1140 [2012]). Contrary to defendant's contention, the waiver colloquy was not rendered insufficient by the Criminal Court's failure to inquire about his knowledge of the rules of evidence and trial procedures, as "mere ignorance of the law cannot vitiate an effective waiver of counsel as long as . . . defendant was cognizant of the dangers of waiving counsel at the time it was made" (People v McIntyre, 36 NY2d 10, 17-18 [1974]; accord People v Hall, 49 AD3d at 1181; see People v Schoolfield, 196 AD2d 111, 115-116 [1994]). Moreover, the record as a whole—including the fact that defendant had the benefit of standby counsel throughout the trial, made appropriate motions, delivered cogent closing arguments and ultimately obtained acquittal on one count—indicates that defendant understood the ramifications of waiving the right to counsel and effectively waived his right (see People v Providence, 2 NY3d at 583-584; People v Morrow, 143 AD3d at 919; People v Berger, 2 Misc 3d 46, 48 [App Term, 2d Dept, 2d & 11th Jud Dists 2003]).
Accordingly, the judgment of conviction is affirmed.
ELLIOT, J.P., PESCE and SIEGAL, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: April 13, 2018