People v Blue (2024 NY Slip Op 05175)

People v Blue

2024 NY Slip Op 05175

Decided on October 22, 2024

Court of Appeals

Halligan

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 22, 2024

No. 73 

[*1]The People & c., Respondent,
v
Anthony Blue, Appellant.

Scott M. Danner, for appellant. 
Philip Tisne, for respondent. 
New York State Association of Criminal Defense Lawyers, The Legal Aid Society,
amici curiae.

HALLIGAN, J.

Defendant Anthony Blue challenges his criminal conviction for five counts of second-degree burglary. Blue argues that a criminal defendant cannot make a knowing, voluntary, and intelligent waiver of the right to counsel unless the trial judge specifically apprises the defendant of his maximum sentencing exposure in years. Rather than imposing a bright-line rule such as this, we have said that a court must ensure a defendant is adequately warned of the dangers and disadvantages of self-representation before allowing him to proceed pro se. A review of the record here confirms that Blue had such an understanding at the time he waived his right to counsel.
Blue also argues that his indictment should have been dismissed on statutory speedy-trial grounds. CPL 30.30 (4) (d), broadly speaking, excludes from the time chargeable to the People a reasonable period of delay when a defendant is joined for trial with a co-defendant. Blue contends this provision does not apply to pre-arraignment time, but the Appellate Division correctly concluded that it does. Thus the 57 days between indictment and arraignment chargeable to Blue's co-defendant were also chargeable to Blue, even though he had not yet been arraigned. For these reasons, we affirm the order of the Appellate Division.
I.
We recount only the facts essential to the issues before us. On March 25, 2013, a grand jury returned a single indictment charging Blue and his co-defendant Carnona Puello with six counts of second-degree burglary (see Penal Law § 140.25 [2]) arising from a series of burglaries in the Washington Heights area of Manhattan. Blue and Puello previously had been arrested on August 27, 2012, but that case was dismissed and Blue was released.
At some point between his release and the arraignment on the indictment that was scheduled for March 28, 2013, Blue traveled from New York to Florida. He did not appear for arraignment at the scheduled time, but Puello did. On April 17, 2013, Puello requested a motion schedule, and the court, after an extension, set June 26, 2013 as its date of decision.[FN1] 1 After law enforcement located and apprehended Blue in Florida, he appeared for arraignment on June 13, 2013—80 days after his indictment and 57 days after Puello's request for an adjournment.
Blue was represented by court-appointed counsel when he appeared for arraignment, but by early 2014 he asked the trial court to proceed pro se. The court first addressed Blue's motion at an appearance on January 8, 2014. It advised Blue that waiving his right to counsel would be "a big mistake" because he "face[d] a lot of jail time." Blue persisted in his request, and the court reiterated that he was making "a mistake," asked him to think more about his decision, and decided to hold the motion over until Blue's next appearance.
When Blue next appeared on February 3, 2014, he insisted that he still wanted to waive his right to counsel. The trial court engaged Blue in a colloquy to determine whether his waiver was knowing, voluntary, and intelligent. It explained, among other things, the nature of the charges against Blue and the dangers and disadvantages of representing oneself in a criminal proceeding. Blue stated that he understood the consequences of his decision. Specifically, he confirmed that he understood that "many pro se representations are not successful"; that he would "be held to the same legal standards" as an attorney; that he would be "foregoing the benefits of courtroom experience and legal training possessed" by his court-appointed attorney; and that he believed he was "capable of representing [himself] in this case." On the last point, Blue informed the court that he had "been involved in the criminal justice system before," and that he had "read [a] criminal advocacy law book" and "been in debate classes." The court also explained to Blue that he was entitled to standby counsel, but Blue waived that right too, stating, "I'm positive. I waive standby counsel also." Following this colloquy, the court was satisfied that Blue's "request [was] unequivocal" and that his decision "to give up [his] right to be represented by a lawyer [was] knowingly and intelligently made." It then granted Blue's request to proceed pro se.
Over the course of the proceedings, Blue filed several motions to dismiss the indictment on statutory speedy-trial grounds. Relevant here is Blue's first motion, filed on April 8, 2014, in which he argued that "[a]ll the time between March 25, 2013, to June 13, 2013, is chargeable to the People" because he "was never notified of the proceedings" and "could not have voluntarily absented himself from a hearing for which he was not informed." The People responded that the entire period should be excluded from the speedy-trial calculation under CPL 30.30 (4) (c) (i) because Blue fled to Florida after learning he had been indicted. Blue denied this allegation, insisting that he had no knowledge of the indictment when he left New York.
Supreme Court denied Blue's motion. It acknowledged the factual dispute over whether Blue left the state to avoid apprehension, but concluded that there was no need to resolve it. Instead, relying on CPL 30.30 (4) (d), the court found that Blue's speedy-trial clock stopped on April 17, 2013, when Puello asked for an adjournment to file pre-trial motions. Because Puello had not requested motion practice until 23 days after the indictment was filed, the court concluded that "at most 23 days of [the 80-day period between Blue's indictment and arraignment] would be" chargeable to the People. In that order, Supreme Court also determined that an additional 70 days were chargeable to the People on other grounds. That brought the speedy-trial clock up only to 93 days—far short of the six-month limit that would require dismissal.
A year later, Blue filed another motion to dismiss pursuant to CPL 30.30. He argued that certain periods subsequent to his earlier motions were chargeable and reiterated his position that the period from March 25, 2013 to June 13, 2013 was chargeable as well. Supreme Court agreed that some additional periods of time post-dating its earlier order were chargeable to the People, and further found that, even assuming the entire 80-day period between Blue's indictment and arraignment was chargeable, "no more than 174 days are chargeable to the People." The court therefore denied that motion as well.
The case proceeded to trial, and a jury found Blue guilty on five of the six counts. Supreme Court sentenced Blue to consecutive terms amounting to twenty-five years in prison followed by five years of post-release supervision. Blue appealed the judgment as well as the subsequent denial of his CPL 440 motion, which was based, among other things, on the alleged CPL 30.30 violation. On the speedy-trial issue, the Appellate Division rejected Blue's contention that the entire period between his indictment and arraignment was chargeable to the People, but agreed that the period from March 25, 2013 to April 17, 2013 was chargeable (see 202 AD3d 546, 547 [1st Dept 2022]).[FN1] 2 The Court also found that the trial court had improperly excluded an unrelated twelve-day period in November 2014 (see id.). Those determinations, taken together, brought the amount of time chargeable to the People to only 180 days,[FN1] 3 and accordingly the Appellate Division agreed that Blue's motion to dismiss the indictment should be denied (see id.).
The Appellate Division also rejected Blue's argument, made for the first time on appeal, that the trial court should have suppressed text messages obtained pursuant to a warrant to search his cell phone because the warrant was executed "more than ten days after the date of issuance," and, according to Blue, thus violated CPL 690.30 (1). The Appellate Division determined there was no statutory violation and affirmed the conviction (see id.).
A Judge of this Court granted Blue leave to appeal (39 NY3d 984 [2022]).
II.
We begin with Blue's challenge to the validity of his waiver of his constitutional right to counsel. It is well-established that a defendant may choose to proceed pro se (see People v McIntyre, 36 NY2d 10, 14-15 [1974]; Faretta v California, 422 US 806, 827-830 [1975]). Because this decision requires a disavowal of the constitutional right to counsel and the many benefits associated with legal representation, "a defendant must make a knowing, voluntary and intelligent waiver of" that right (People v Arroyo, 98 NY2d 101, 103 [2002]).
A trial court must undertake a "searching inquiry" in assessing whether a defendant's waiver meets this standard (People v Providence, 2 NY3d 579, 582 [2004] [internal quotation marks omitted]). That "inquiry encompasses consideration of a defendant's pedigree since such factors as age, level of education, occupation and previous exposure to the legal system may bear on a waiver's validity" (People v Crampe, 17 [*2]NY3d 469, 482 [2011]). Furthermore, it must be "aimed at insuring that the defendant [is] aware of the dangers and disadvantages of proceeding without counsel" (Providence, 2 NY3d at 582 [internal quotation marks omitted]; see also People v Vivenzio, 62 NY2d 775, 776 [1984]). As the U.S. Supreme Court put it, a trial court must assure itself that the defendant "knows what he is doing and his choice is made with eyes open" (Faretta, 422 US at 835, quoting Adams v United States ex rel. McCann, 317 US 269, 279 [1942]).
Mindful that "there is simply no one-size-fits-all format for a searching inquiry" (Crampe, 17 NY3d at 483), "we have eschewed application of any rigid formula and endorsed the use of a nonformalistic, flexible inquiry" (Arroyo, 98 NY2d at 104). We have required that the colloquy "adequately warn[] a defendant of the risks inherent in proceeding pro se, and appris[e] a defendant of the singular importance of the lawyer in the adversarial system of adjudication" (People v Smith, 92 NY2d 516, 520 [1998]).
When a defendant challenges the validity of their waiver on appeal, "a reviewing court may look to the whole record, not simply to the questions asked and answers given during a waiver colloquy," to determine whether the defendant effectively waived counsel (Providence, 2 NY3d at 581). In reviewing the record, "[t]he critical consideration is defendant's knowledge at the point in time when he first waived his right to counsel" (Crampe, 17 NY3d at 483). Although post-colloquy proceedings cannot "retrospectively 'cur[e]'" an invalid waiver, "the record as a whole may [] be considered when a court assesses whether the accused [was] aware of the dangers of self-representation" at the time of the waiver colloquy (id.).
Blue argues that his waiver was deficient in only one respect: the trial court did not expressly lay out during the waiver colloquy the range of allowable punishments—including the maximum number of years of potential imprisonment—that Blue might face if convicted. That position finds support in at least one decision from the First Department, which held that the trial court was required to inform a defendant during the colloquy of their "actual sentencing exposure" (see People v Rodriguez, 158 AD3d 143, 152-153 [1st Dept 2018]; but see People v Rogers, 186 AD3d 1046, 1048 [4th Dept 2020] [declining to follow Rodriguez]). But neither this Court nor the U.S. Supreme Court have required a specific recitation of maximum potential years of imprisonment as part of a valid waiver colloquy. To the contrary, we have declined to impose particularized requirements of this sort upon a trial court, instead instructing that the inquiry is flexible and should be aimed at achieving the goals outlined above (see, e.g., Providence, 2 NY3d at 583; Arroyo, 98 NY2d at 104; Smith, 92 NY2d at 520-521; see also Faretta, 422 US at 835).
None of the cases Blue and the dissent marshal hold otherwise. In Von Moltke v Gillies (332 US 708 [1948]), a plurality of the U.S. Supreme Court emphasized that the validity of a waiver turns on the "circumstances" surrounding it (id. at 723, 724). There, the defendant—the wife of an alleged German spy who was told only that she was being held indefinitely "as a dangerous enemy alien"—was briefly assigned an attorney who agreed to represent her for "only two or three minutes" at arraignment, but she otherwise had "no legal counsel upon whom to rely except the government lawyer-agents" who would prosecute her case (id. at 711, 722, 716-717). Throughout the proceedings, the defendant gave no indication that she was aware "a sentence of death could be imposed under the charges" (id. at 718); witness testimony revealed the defendant's "perplexity," "doubt," and "uncertainty" leading up to her decision to plead guilty; and the record revealed no "explanation of the implications of the indictment or of the consequences of her plea" (id. at 725, 719). On those facts, the plurality found her waiver of counsel invalid and noted that information "essential to a [defendant's] broad understanding of the whole matter" included "an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, [and] possible defenses to the charges and circumstances in mitigation thereof" (id. at 724).
Our analysis in Matter of Lawrence S (29 NY2d 206 [1971]) was along similar lines. We noted that the case involved a "13-year-old respondent," and that "with respect to a juvenile charged as a delinquent, the courts have imposed particularly strict requirements before permitting a waiver of his right to counsel" (id. at 209, 208). We found the waiver invalid not because the court failed to make any particular statement during the colloquy regarding the potential years of imprisonment faced by the defendant, but because the court's inquiry did not sufficiently account for the youth and inexperience of the defendant (see id. at 208-209).
Nor does Iowa v Tovar (541 US 77 [2004]) mandate that a colloquy include any specific, formulaic statements regarding the precise number of years of incarceration a defendant might face. In Tovar, the U.S. Supreme Court unanimously reversed a state court decision requiring trial courts to give specific warnings to a defendant during a waiver colloquy (see id. at 81). The Court found the colloquy at issue sufficient even without these warnings because the defendant was informed of the charges against him, his right to counsel, and the range of allowable punishments (see id.). While finding those factors relevant, the Court did not hold it constitutionally necessary to provide each of those three specific items of information during a colloquy. Indeed, the Court stressed that it has never "prescribed any formula or script to be read to a defendant" during a colloquy, and that its "decisions indicate" that "[t]he information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors" (id. at 88; see also id. at 92). Thus, as we previously have explained, Tovar reaffirms that "the scope of a searching inquiry turns on the context in which the right to counsel is waived," rather than declaring a new rule for assessing the validity of a waiver (Crampe, 17 NY3d at 483; see also id. at 484, citing and discussing Tovar, 541 US at 89).[FN1] 4
The question before us, then, is whether Blue was adequately warned of the dangers of proceeding pro se when he waived his right to counsel. Our review of the whole record satisfies us that he was.
The proceedings prior to the colloquy establish that Blue was aware that he likely would serve a lengthy prison sentence if convicted. At arraignment, the People informed the court in Blue's presence that "the defendant is charged with six C violent felonies and faces substantial time." Then, while conversing with the defense counsel, the court explained that "[t]he defendant faces a mandatory state prison sentence and could get consecutive sentences. He is clearly facing a lot of time." That remark prompted the People to clarify the sentence they would seek: "The People in this case are recommending 12 years jail with five years [*3]post release supervision." Later, on January 8, 2014, when the court first addressed Blue's motion to proceed pro se, Blue explicitly stated that he understood he might serve a significant sentence:
"The Defendant: I still would like to waive counsel and proceed pro se.
The Court: That's a big mistake. You face a lot of jail time.
The Defendant: I understand, your Honor, but I am making my decision.
. . . 
The Court: It's a big mistake.
. . . 
The Defendant: So what is the decision for the pro se?
The Court: I want you to think about that. That's a mistake. I am going to ask you a lot of questions on February 3rd.
The Defendant: I understand."
In light of these exchanges during pre-colloquy proceedings, it is clear that Blue had an understanding of the extent of his potential sentencing exposure by the time the trial court conducted its waiver inquiry on February 3, 2014. Then, during the colloquy, Blue informed the court that he had been through a trial before and that he understood he was charged with "[b]urglary [in] the second degree." He also told the court that he had discussed a potential plea bargain—what he called a "cop out"—and the strength of the People's evidence with his court-appointed attorney, indicating that he understood he faced an even longer sentence than the twelve years of imprisonment and five years of post-release supervision that the People sought.
Nothing in the post-colloquy proceedings suggests Blue did not apprehend the extent of his potential sentencing exposure. During an appearance on September 29, 2014, the court noted that Blue's "exposure in this case is huge" and that he could "go to jail for 25, 30, [or] 40 years," to which Blue replied that he was "aware" and understood. The court later informed Blue, during discussion of a possible plea, that his exposure was "way, way beyond five years" and Blue said, "I'm fully aware of it. I'm fully aware." These proceedings confirm what was apparent from the pre-colloquy proceedings: Blue had an understanding of the extent of his potential sentencing exposure at the time he elected to waive his right to counsel.[FN1] 5 We thus find his waiver valid.[FN1] 6
III.
We turn now to Blue's statutory speedy-trial claim. "CPL 30.30 require[s] that the People be ready for trial within specific time periods that vary according to the level of offense charged" (People v Bay, 41 NY3d 200, 207 [2023]). "The failure to declare readiness within the statutory time limit will result in dismissal of the prosecution, unless the People can demonstrate that certain time periods should be excluded" (People v Price, 14 NY3d 61, 63 [2010]). When, as here, a defendant is charged with a felony, CPL 30.30 (1) (a) requires the People to be ready for trial within six months of the commencement of the criminal action. The parties agree that the People were required to declare readiness within 184 days, and that the Appellate Division properly charged 180 days to the People. They dispute whether the 57-day period from April 17, 2013, when Puello adjourned for motion practice, and June 13, 2013, when Blue was arraigned, should be excluded pursuant to CPL 30.30 (4) (d). The Appellate Division concluded that the period is not chargeable to the People. We agree.
"When resolving a question of statutory interpretation, the primary consideration is to ascertain and give effect to the legislature's intent" (People v Schneider, 37 NY3d 187, 196 [2021]). As the clearest indicator of legislative intent, "the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (People v Golo, 26 NY3d 358, 361 [2015] [internal quotation marks omitted]). CPL 30.30 (4) (d) provides that "the following period[] must be excluded" from the speedy-trial clock: "a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial pursuant to this section has not run and good cause is not shown for granting a severance." The question before us is when a defendant is "joined for trial" with a co-defendant: prior to arraignment, or, in cases where the defendant is not arraigned at the same time as his co-defendants, only afterwards. The answer to that question is supplied by CPL 200.40, which sets forth "[t]he three basic situations in which two or more defendants may be joined for trial" (Peter Preiser, Prac Commentaries, McKinney's Cons Laws of NY, CPL 200.40). As relevant here, CPL 200.40 (1) (a) states that "[t]wo or more defendants may be jointly charged in a single indictment provided that . . . all such defendants are jointly charged with every offense alleged therein." Blue and Puello were jointly charged in a single indictment with every offense alleged therein, and so Blue was joined for trial with his co-defendant at the time of indictment, prior to his arraignment, for purposes of CPL 30.30 (4) (d).
This interpretation is consistent with the purposes underlying the exclusion. We long have recognized that in the State of New York, "a strong public policy favors joinder, because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses" (People v Mahboubian, 74 NY2d 174, 183 [1989]). CPL 30.30 (4) (d) furthers that policy by facilitating joint proceedings, easing the administration of multidefendant cases, and preventing defendants from benefitting from delays caused by co-defendants who might, for example, make successive requests for adjournments (see People v Chrysler, 152 AD3d 825, 827 [3d Dept 2017], lv denied 30 NY3d 948 [2017]). We note that the federal courts have inferred the same purposes from near-identical statutory language (see, e.g., United States v Pena, 793 F2d 486, 489-490 [2d Cir 1986]).
Blue argues that a defendant nonetheless cannot be joined for trial for purposes of CPL 30.30 (4) (d) until they have been arraigned. Arraignment confers jurisdiction over a defendant (see People v England, 84 NY2d 1, 4-5 [1994]) and triggers various rights under the Criminal Procedure Law (see CPL 210.15 [1], [2]). But these points do not necessarily compel the reading of CPL 30.30 (4) (d) that Blue advances. As an initial matter, the text of the provision does not differentiate between pre- and post-arraignment time. And we previously have recognized that the People may declare readiness before a defendant is arraigned and that certain pre-arraignment delays not attributable to the People may be excluded from the speedy-trial clock [*4](see, e.g., People v Carter, 91 NY2d 795, 799 [1998]), confirming that time is not chargeable to the People simply because no court has jurisdiction over the criminal action and the defendant's rights have not yet attached under the Criminal Procedure Law.
In the same vein, Blue argues that if the legislature had intended for the exclusion to apply before arraignment, then it would have expressly said as much. He suggests that we should infer from the absence of a clear statement applying the exclusion to pre-arraignment time that it applies only to post-arraignment time. The statutory scheme refutes the premise of this argument. Looking to the rest of CPL 30.30, we note that another provision distinguishes between pre- and post-arraignment time (see CPL 30.30 [4] [i]). That express textual distinction shows that the legislature knew how to draft an exclusion that applies only to pre- or post-arraignment time, but did not do so in CPL 30.30 (4) (d).
Blue also argues that the provision's reference to severance implicitly limits CPL 30.30 (4) (d) to post-arraignment time. The provision does not apply unless "good cause is not shown for granting a severance" (CPL 30.30 [4] [d]). Blue notes that severance is a remedy ordinarily available to a defendant only after they have been arraigned (see CPL 255.20 [1]), and argues that it would not make sense for CPL 30.30 (4) (d) to apply before arraignment, when a defendant cannot sever their proceedings. We disagree. When the People seek to exclude time pursuant to CPL 30.30 (4) (d), a defendant may make a showing of good-cause severance not necessarily to sever the joint proceedings, but instead to charge that period of time to the People. Some defendants might wish only to charge additional time to the People, without actually severing the joint proceedings. And as at least one Appellate Division has recognized, the exclusion allows a defendant to show that he would have had good cause to sever at some earlier time (see People v Vidal, 180 AD2d 447, 448-449 [1st Dept 1992]).
Next, Blue argues that his interpretation of CPL 30.30 (4) (d) better reflects the purposes of the exclusion. He concedes that the exclusion is intended to prevent defendants from causing delays that inure to the benefit of co-defendants, but says that a defendant cannot engage in this kind of gamesmanship until after they have been arraigned, precisely because they cannot file pre-trial motions until that point (see CPL 255.20 [1]). That may be so, but a co-defendant, if arraigned, can still participate in that kind of gamesmanship. Further, Blue cannot square his interpretation with the other purposes of the provision, namely, to facilitate joint proceedings and ease administration of multidefendant cases. His interpretation would force the People to undertake the difficult task of maintaining a separate speedy-trial clock for each defendant in a joint proceeding, which might in turn necessitate separate trials—an outcome that would undermine a key purpose of the exclusion.
Finally, Blue argues that even if a defendant can be "joined for trial" with a co-defendant before he is arraigned, charging pre-arraignment time to the defendant would conflict with the statutory language that restricts exclusions to a "reasonable period of delay" (CPL 30.30 [4] [d]). According to Blue, it would be unreasonable to charge time to a defendant before a court has jurisdiction and before their rights under the Criminal Procedure Law have attached. But, as we have said, pre-arraignment delays not caused by the People may be charged to a defendant (see Carter, 91 NY2d at 799), and Blue has not shown that charging Puello's pre-arraignment delay to him is unreasonable.
In sum, we conclude that the Appellate Division properly excluded from the speedy-trial calculation the 57-day period between Puello's request to adjourn and Blue's arraignment. That leaves the speedy-trial clock at 180 days, four fewer than the maximum number of days to which the People are statutorily entitled.
IV.
Blue's remaining challenges are unpreserved or meritless. He argues that he is entitled to a new trial because text messages taken from his cell phone were improperly admitted into evidence in violation of CPL 690.30 (1), which governs the execution of search warrants. This argument is unpreserved. In supplemental pro se briefing, Blue also presents two additional statutory speedy-trial claims. The first of these remaining arguments is not sufficiently developed to establish a basis for reversal and the second is belied by the record.
The order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting):

I would reverse and hold that the Constitution requires the trial court to explore whether a criminal defendant is aware of their sentencing exposure as part of its "searching inquiry" before they may proceed pro se (People v White, 56 NY2d 110, 117 [1982]).[FN1] 7 Here, the court failed to ensure that defendant was aware of the range of punishments allowable for the crimes as charged and a new trial is required.
A defendant may waive their right to counsel and proceed pro se but only once the court has confirmed for itself that the defendant is aware of the risks of foregoing assistance of counsel (Matter of Lawrence S., 29 NY2d 206, 208 [1971], quoting Von Moltke v Gillies, 332 US 708, 724 [1948]; Iowa v Tovar, 541 US 77, 81 [2004]). The court's duty is not solely to inform defendants lacking the legal training and skills necessary to meaningfully defend against the prosecution of the dangers of self-representation. As the United States Supreme Court and this Court have explained, the duty entails much more. Before they may proceed pro se, a defendant must apprehend "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder," in addition to any other "facts essential to a broad understanding of the whole matter" (Matter of Lawrence S., 29 NY2d at 208, quoting Von Moltke, 332 US at 724). When assessing if the prosecution has met its burden of "proving a knowing, intelligent and voluntary waiver," "the courts must indulge every reasonable presumption against waiver" (People v Davis, 75 NY2d 517, 523 [1990], citing Brewer v Williams, 430 US 387, 404 [1977]).
As the Supreme Court stated in Von Moltke v Gillies:
"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before [them] demand[s]" (332 US 708, 723-724).[FN1] 8
A constitutionally valid waiver:
"must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances" (id. at 724 [emphasis added]).
In other words, judicial confirmation that the defendant appreciates each of these circumstances is a necessary component of the court's protective duty. It is not enough for the court to assume that, under the circumstances, the defendant probably appreciates the risks of going pro se—for the waiver to be valid, the court must create a record that establishes defendant's knowledge of those risks, including the defendant's sentencing exposure.
The majority holding on the matter is unclear. Perhaps the majority means to say one of the following: (1) its flexible, case-by-case inquiry results in no actual requirement that the trial court ensure that a defendant have any comprehension of the range of punishments that they face; (2) there is some requirement that a defendant understand if they face prison time; (3) as long as the defendant is charged with a serious crime, they should know they face significant time; or (4) no constitutional problem arises if the defendant has some ballpark understanding of the amount of time they face, even if that is off by almost a decade. Whatever the majority intends, its analysis disregards the import of Supreme Court and Court of Appeals precedent establishing a more straightforward, workable requirement that a court ascertain whether a defendant has an understanding of the range of allowable punishments they face before they may validly waive counsel.
The majority misconstrues how this Court previously characterized the holding of Von Moltke. As explained in Matter of Lawrence S:
" 'To be valid', the Supreme Court declared in the Von Moltke case (332 U. S. 708, 724, supra.), 'such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter" (29 NY2d at 208-209 [emphases added]).
While the Lawrence S. Court noted that the government must meet a particularly "heavy burden" to permit a juvenile to waive counsel, this did not—and, of course, could not—either raise or lower Von Moltke's federal constitutional floor (see Matter of Lawrence S., 29 NY2d at 208). Matter of Lawrence S. merely confirmed the settled proposition that, as with waivers of constitutional rights generally, age is a factor that courts must consider when evaluating whether the record supports " 'an intentional relinquishment or abandonment of a known right' " to counsel (U. S. ex rel. B. v Shelly, 430 F2d 215, 218 [2d Cir 1970], quoting Johnson v Zerbst, 304 US 458, 464 [1938], cited in Matter of Lawrence S., 29 NY2d at 208). Accordingly, for juveniles, the last clause of the Von Moltke rule, "and all other factors essential to the understanding of the matter" necessarily may include more (332 US at 724). Contrary to the majority's suggestion, nothing in Matter of Lawrence transforms the requirement for understanding the "range of allowable punishments" as optional.
Here, defendant argues that the court's inquiry was deficient because it failed to confirm defendant's understanding of the range of allowable punishments. Defendant was charged with six counts of second-degree burglary (see Penal Law § 140.25 [2]), and, according to the prosecution, faced a maximum sentencing exposure of 90 years, subject to a statutory 20 year cap (Penal Law § 70.30 [1] [e] [i]).[FN1] 9 Defendant asserts that the court should have conducted the required "searching inquiry" about his awareness of the "range of allowable punishments," including his maximum sentencing exposure. The court's failure to do so rendered his waiver of his right to counsel invalid. To the extent the majority describes how the court complied with its duty in other respects—informing defendant of the risks of self-representation—defendant does not challenge this aspect of the court's inquiry. The fact that the court's inquiry may have been adequate in other ways, is beside the point, as it is irrelevant to the specific question before us of whether defendant understood the range of punishments. The majority clouds the issue by stating that there is no "mandate that [*5]a colloquy include any specific, formulaic statements" (majority op at 10). I agree that the Court has never imposed a catechism for ensuring a knowing, voluntary, and intelligent waiver. Nor has the Supreme Court, which has explained that a colloquy does not require "any formula or script to be read to a defendant" to be valid (Tovar, 541 US at 81). But allowing courts flexibility in how they carry out their duty and how they communicate with a defendant has no bearing on what they must convey in order to comply with that duty and does not diminish a court's responsibility to make sure whatever is said and done complies with the Constitution. While a colloquy need not "include any specific, formulaic statements regarding the precise number of years of incarceration a defendant might face," it still must address the range of allowable punishments (majority op at 10). Otherwise, a court cannot be certain that the defendant is making an informed decision to waive their constitutional right.
The most obvious way a court may ensure that a defendant understands the range of punishments is to discuss the defendant's sentencing exposure with them while discussing the inherent risks of self-representation. But merely stating that a defendant faces incarceration, or "a lot of time"—as the court did here—is constitutionally inadequate. We have rejected similar language (see e.g. People v Kaltenbach, 60 NY2d 797, 798-799 [1983] ["The court's declarations—that defendant was entitled to be represented by a lawyer; that he was facing a serious charge; and that, if convicted, he could receive a year's imprisonment—did not satisfy the duty to make a searching inquiry"];1 [FN1] 0 People v Sawyer, 57 NY2d 12, 21 [1982] ["The court's declarations that defendant was 'facing a very serious charge' and that 'your own best interests are probably served by having a lawyer represent you' simply did not satisfy the duty to make a 'searching inquiry' "]).
The word "range" means "the limits of a series: the distance or extent between possible extremes" or "the difference between the least and greatest values of an attribute" (Merriam-Webster Online Dictionary, range [https://www.merriam-webster.com/dictionary/range]). A defendant understands "the range of allowable punishments" if that includes knowledge of the length of a possible confinement (Von Moltke, 332 US at 724). The court may easily dispense with its duty by ensuring that a defendant knows the statutory maximum allowable under the Penal Law for each offense charged, that sentences on the offenses may run consecutively or be subject to enhancement, and the application of the statutory cap. The court may also rely on a clear record that defendant is aware of the potential years of confinement. Here, prior to accepting defendant's waiver of the right to counsel, the court did not inform him of the potential span of confinement or the maximum time he faced if convicted on all charges. Though the majority claims otherwise (majority op at 11), the record does not clearly support defendant's understanding of his sentencing exposure at that [*6]time. Defendant does not state his understanding of the potential sentence he faced, and his attorney provided no such information in defendant's presence on the record as to the time he would potentially serve.
As the majority correctly recognizes, "post-colloquy proceedings cannot 'retrospectively "cure" an invalid waiver'" (majority op at 8, quoting People v Crampe, 17 NY3d 469, 483 [2011] [internal quotation marks omitted and alteration incorporated]). To the extent the majority asserts that defendant's post-waiver statements only confirm his pre-waiver understanding, the majority's assertion is no argument at all since it depends on a pre-waiver basis for concluding defendant had the requisite knowledge (see id. at 483). So, we must look to the record before and at the time of the waiver.
The majority claims that defendant "was aware that he likely would serve a lengthy prison sentence if convicted" (majority op at 11). The majority relies on the prosecution's in-court statement in defendant's presence that he was "charged with six C violent felonies and faces substantial time" (id.). This statement says nothing about the number of years in prison defendant faced. Reliance on such would also lead to the absurd result that mere knowledge of the crimes charged is sufficient to establish knowing, intelligent waiver of the right to counsel. The majority also points to the court's statement to defense counsel that "defendant face[d] a mandatory state prison sentence and could get consecutive sentences. He is clearly facing a lot of time" (id.). Statements to defense counsel are not the same as judicial inquiry of the defendant ensuring they understand those statements. They provide no basis for inferring that the defendant possesses a constitutionally-sufficient "apprehension" of the consequences of firing their lawyer and representing themselves (Von Moltke, 332 US at 724). Moreover, the court's statement, like the prosecutor's, failed to put a numerical range to defendant's potential "time" in prison.
There is no way around the Supreme Court's mandate that a constitutionally effective waiver requires that a defendant understand the range of punishments (Tovar, 541 US at 81). "Substantial" means "large" and "a lot" means "very much" or "a large number." The use of either or both these terms fails to convey the enormity of the potential sentence. Indeed, a person facing five years of incarceration would reasonably consider this to be substantial and a lot of time. Here, if found guilty, defendant faced decades in prison (Penal Law § 140.25 [2]; Penal Law § 70.00[2][c]). The expanse of that range of incarceration was certainly relevant to defendant's assessment of the risk of self-representation. The majority further notes that, in reaction to the court's statement, the prosecution represented that it was "recommending 12 years jail with five years post release supervision." But that was a recommendation, and in any case, not close to defendant's maximum sentencing exposure, even after applying the statutory cap.
Lastly, the majority quotes defendant's statement during the court's first colloquy on January 8, 2014, as establishing that defendant understood he faced "a significant sentence" (majority op at 11). But that is not what defendant said. Rather, in response to the court's statement that defendant's request to waive counsel and proceed pro se would be "a big mistake. You face a lot of jail time," defendant replied, "I understand your Honor, but I am making my decision." The majority places undue weight on this one sentence; defendant's response in no way clarifies his understanding of what the court meant by a lot of time, and, more significantly, what defendant would consider to be a lot of time. That is why the Supreme Court has wisely interpreted the Constitution to require the court to confirm defendant understands the range of punishments, rather than an abstract reference to a "substantial" or "a lot" of time.
Similarly, the majority states that defendant's description of the plea bargain as a "cop out" indicated that "he understood he faced an even longer sentence than the twelve years of imprisonment and five years of post-release supervision" (majority op at 12). This misrepresents the record by omitting crucial context:
"THE COURT: You've never discussed this case with your attorney at all?
THE DEFENDANT: No.
THE COURT: The strength of the People's case, none of that?
THE DEFENDANT: Nothing. The only thing we've discussed is a cop out. We haven't discussed trial strategy, nothing.
THE COURT: Well, when you discussed what you call "a cop out," is that a plea?
THE DEFENDANT: Plea bargain, yes, sir.
THE COURT: Didn't your attorney discuss with you the strength of the People's case, what their evidence is going to be?
THE DEFENDANT: There is no evidence.
THE COURT: That's not what I'm asking you. I'm asking you didn't your attorney tell you what the People say their evidence is going to be. You went over that?
THE DEFENDANT: Yes. She told me something about some text messages. I haven't seen anything."
There is nothing in this exchange that indicates defendant understood the upper and lower limit of the range of sentences he faced. To the extent that he did understand that the plea bargain offer meant he faced at least 12 years' incarceration, that figure was off by 40% since defendant actually faced 20 years in prison. It appears the majority has decided that 12 years is "close enough" to 20. Putting aside that the majority provides no normative basis for determining what is close enough to an actual range to satisfy the requirement—or to guide courts in the future—the difference between 12 and 20 years—almost a decade—is certainly not close enough by any rational metric.
The majority confuses the method of informing the defendant of the range of punishments during the colloquy with whether the court needs develop a record indicating that the defendant knows about the range of punishments at all. By stretching beyond any permissible bounds of what a "flexible inquiry" may require, the majority concludes that this inquiry may be so flexible as to be functionally no inquiry at all that defendant comprehends the range of sentences they face (People v Arroyo, 98 NY2d 101, 104 [2002]). Permitting "a lot" to satisfy the court's duty to inform defendant about the range of sentences they face makes the requirements of this inquiry so flexible as to be meaningless.
Numbers matter. As I have stated previously, a defendant's sentencing exposure is perhaps the most important information necessary for a defendant to chart their course. It affects their decision whether to plead guilty, testify on their own behalf, and represent themselves without the assistance of a trained legal advocate (Tovar, 541 US at 81; People v Bush, 38 NY3d 66, 80 [2022] [Rivera, J., dissenting]; People v Williams, 27 NY3d 212, 226 [2016] [Rivera, J., dissenting]). It is neither impossible nor a significant burden on the court to ensure defendant understands the range of punishments with some numerical reference. The Penal Law sets the potential sentence. To the extent the majority believes it is simply too much to expect and somehow too complex a calculus for a court to provide a range, then how can we expect a defendant to be more adept at determining their sentencing exposure?
Courts can provide a defendant information about the range of their sentencing exposure and do so all the time. Since the Constitution tolerates nothing less, I dissent.
Order affirmed. Opinion by Judge Halligan. Chief Judge Wilson and Judges Garcia, Singas, Cannataro and Troutman concur. Judge Rivera dissents in an opinion.
Decided October 22, 2024

Footnotes

Footnote 1: 1 Puello eventually pleaded guilty to the charges and is not a party to this appeal.

Footnote 1: 2 Blue also argued that the entire 33-day period from May 11, 2015 to June 13, 2015 was chargeable to the People. The trial court charged part of that time to the People but found that the speedy-trial clock stopped on June 7, when Blue filed a motion to dismiss. Blue contended that the clock should not have stopped until June 13, 2015, apparently because he had mailed his motion from out of state. The Appellate Division did not expressly address this contested period.

Footnote 1: 3 Although the Appellate Division did not elaborate on this point, the parties agree that at least 180 days are chargeable to the People.

Footnote 1: 4 The dissent's reliance on People v Kaltenbach (60 NY2d 797 [1983]) and People v Sawyer (57 NY2d 12 [1982]) is misplaced (see dissenting op at 7). Those decisions turned not on the absence of any particular statement from a waiver colloquy, but on the absence of a meaningful colloquy altogether. In Kaltenbach, the trial court undertook merely a "precautionary inquiry" consisting of statements "that defendant was entitled to be represented by a lawyer," "that he was facing a serious charge," "and that, if convicted, he could receive a year's imprisonment" (62 NY2d at 799). We held that absent "further colloquy regarding defendant's decision" to proceed pro se, these "declarations . . . failed to adequately warn defendant of the risks inherent in representing himself or to apprise him of the value of counsel" (id. at 798, 799 [internal quotations omitted]). We found the waiver in Sawyer invalid for the same reason: the trial court's "precautionary inquiry" consisted only of "declarations" to the defendant, rather than a "colloquy on the record between the judge and defendant [to] test the defendant's understanding" of his decision (57 NY2d at 21 [internal quotations marks omitted]). There is no question here that the trial court engaged in a colloquy with Blue to test his understanding of his request to proceed pro se.

Footnote 1: 5 The dissent dismisses the requirement that a defendant apprehend the extent of his potential sentencing exposure as "unclear" (dissenting op at 3), but it is difficult to ascertain exactly what obligation the dissent would impose (see id. at 2, 6, 8, 9). If the dissent means to suggest that a trial court must inform a defendant of "the statutory maximum allowable under the Penal Law for each offense charged, that sentences on the offenses may run consecutively or be subject to enhancement, and the application of the statutory cap" (id. at 8), there is, as we have explained, no precedent from the U.S. Supreme Court or this Court mandating such specificity.

Footnote 1: 6 After Blue's trial, the Model Colloquy was revised to include a statement of the defendant's potential sentencing exposure. As we have "emphasized, the model charges contain the 'preferred phrasing' of legal instructions" (People v J.L., 36 NY3d 112, 122 [2020], quoting People v Cubino, 88 NY2d 998, 1000 [1996]).

Footnote 1: 7 I agree with the majority's disposition of defendant's other claims.

Footnote 1: 8 Von Moltke v Gillies (332 US 708) is a plurality opinion, but its "range of allowable punishments" requirement was adopted by a unanimous United States Supreme Court in Tovar (541 US at 81, 88-89) and by this Court in Matter of Lawrence S. (29 NY2d at 208).

Footnote 1: 9 This sentence would be deemed to be 20 years after applying the limitation on consecutive determinate sentences set forth in Penal Law § 70.30(1)(e)(i). In People v Moore (61 NY2d 575, 578 [1984]), this Court explained that:

"[w]hen the aggregate maximum term of consecutive sentences imposed . . . exceeds the applicable limitation set forth in section 70.30 (subd 1, par [c]) of the Penal Law, the term shall be 'deemed' to be equal to that limitation and 'reduced' accordingly. The statute does not restrict the number or length of the individual consecutive sentences that may be imposed it merely requires that the Department of Correctional Services calculate the aggregate maximum length of imprisonment consistent with the applicable limitation" (id.).
Accordingly, as conceded by the prosecution, defendant's maximum sentencing exposure—the incarceratory term the court could impose—was 90 years.

Footnote 1: 10 The majority incorrectly characterizes Kaltenbach as turning "not on the absence of any particular statement from a waiver colloquy, but on the absence of a meaningful colloquy altogether," (majority op 10 n 4, 60 NY2d 797, 798-799). Kaltenbach states, that "[t]here was no further colloquy regarding defendant's decision" (id. at 798 [emphasis added]) and, "[t]he court's declarations—that defendant was entitled to be represented by a lawyer; that he was facing a serious charge; and that, if convicted, he could receive a year's imprisonment—did not satisfy the duty to make a searching inquiry" (id. at 799). The Court continued that "the precautionary inquiry in this case" was insufficient—in other words, it existed, but was not enough. Here, too, there was a colloquy that was insufficiently searching to determine whether defendant comprehended the range of allowable punishments.